**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

LASHANN ADAMS, ET AL.

VERSUS

METROPOLITAN LIFE INSURANCE
COMPANY

CIVIL ACTION

24-668-SDD-RLB

**RULING**

This matter is before the Court on cross Motions for Judgment on the Administrative Record filed by Plaintiffs, LaShann Adams and Ta'Mara Adams,[1] and Defendant, Metropolitan Life Insurance Company ("MetLife").[2] Plaintiffs also filed a Reply Brief on the Merits.[3] For the following reasons, MetLife's Motion will be granted, and Plaintiffs' Motion will be denied.

**I.    FACTUAL BACKGROUND**

Audrey Adams ("the Insured") obtained basic and optional life insurance coverage through a group policy (the "Plan") issued to her former employer, General Motors Corporation ("GM").[4] In September 1976, the Insured signed a form designating her parents, Amos and Marie Adams, as beneficiaries.[5] The Insured did so twice more in 1984 and 1985.[6]

---

[1] Rec. Doc. 33.
[2] Rec. Doc. 34.
[3] Rec. Doc. 35.
[4] Rec. Doc. 28-2.
[5] Rec. Doc. 28-5, p. 23.
[6] *Id.* at pp. 24–26.

Plaintiff LaShann Adams ("Plaintiff") is the Insured's daughter.[7] According to Plaintiff, the Insured began living with her in Baton Rouge in 2020 due to health problems.[8] In 2021, Plaintiff hired a caregiver named Sefera Givens ("Givens") to help take care of the Insured.[9]

On August 16, 2022, Givens made a phone call to the GM Benefits and Services Center. The audio recording of this phone call is in the Administrative Record.[10] During the call, Givens and the Insured were together, and the phone representative spoke with both of them. The following is a summary of the recorded phone call. At the prompting of the representative, the Insured recites her name, date of birth, address, and phone number.[11] Then, the Insured gives the representative permission to speak to Givens.[12] Givens eventually tells the representative that the Insured wants to "remove her daughter off of her policy" and that she wants "to change beneficiaries."[13] In response, the representative says that this can be done over the phone, and indicates that "right now, there is not anyone listed on here" as beneficiary.[14] Givens can be heard saying, "you gotta put somebody on there," and the Insured says, "you put your name on there."[15] Givens tells the representative that the Insured wants to designate Givens as the

---

[7] Rec. Doc. 1, ¶ 8. The other Plaintiff, Ta'Mara Adams, is alleged to be the Insured's granddaughter. *Id.* In their brief, Plaintiffs concede that Ta'Mara "would be second in line to the death benefits behind LaShann, and has no viable claim in this action as long as LaShann remains alive." Rec. Doc. 33-1, p. 7 n.3. In light of this concession, the Court will treat LaShann Adams as the sole Plaintiff, and the claims made by Ta'Mara Adams will be dismissed.

[8] Rec. Doc. 1, ¶ 10.

[9] *Id.* at ¶¶ 11–12.

[10] Rec. Doc. 31 (conventionally filed).

[11] *Id.* at timestamp 1:00–6:30.

[12] *Id.* at timestamp 6:30.

[13] *Id.* at timestamp 12:24. Earlier in the call, Givens told the representative that the Insured's daughter had been "misusing funds." *Id.* at timestamp 0:27.

[14] *Id.* at timestamp 12:51.

[15] *Id.* at timestamp 13:03.

beneficiary.[16] The representative says that she needs to hear this information from the Insured, to which the Insured replies, "This is Audrey. I'm approving it."[17] The Insured then identifies Givens as her "cousin and caregiver" and provides Givens' date of birth, phone number, and address.[18] The representative asks the Insured if she wants Givens "to have 100%," to which the Insured responds, "yes."[19] The representative informs the Insured that "these beneficiary choices take effect immediately and replace all previous designations for the coverages you've selected, and you are consenting to these changes by use of your electronic signature; so if you would briefly say, 'I agree.'"[20] The Insured responds, "I agree."[21] MetLife processed this change and recognized Givens as the beneficiary two days later on August 18, 2022.[22]

The Insured died on February 2, 2024.[23] Plaintiff wrote MetLife a letter on February 14, 2024, seeking "to have the beneficiary changed back to me."[24] Plaintiff claimed in the letter that she and the Insured were "scammed" by Givens.[25] She explained that Givens obtained power of attorney over the Insured despite "knowing my mother was not in the mental capacity to agree to this," and alleged that Givens "misused the POA" to make herself the beneficiary.[26] Plaintiff also submitted several documents to MetLife, including a "Last Will and Testament" and certain medical records of the Insured.[27]

---

[16] *Id.* at timestamp 13:12.
[17] *Id.* at timestamp 13:17.
[18] *Id.* at timestamp 14:49.
[19] *Id.* at timestamp 17:03
[20] *Id.* at timestamp 17:20.
[21] *Id.* at timestamp 17:43.
[22] Rec. Doc. 28-5, p. 27.
[23] *Id.* at p. 37.
[24] *Id.* at p. 10–11.
[25] *Id.*
[26] *Id.*
[27] *Id.* at pp. 12–19.

MetLife denied Plaintiff's claim on April 26, 2024. MetLife explained in its denial letter that the most recent beneficiary designation on file was made by the Insured on August 16, 2022, by phone.[28] The claim was thus denied because Plaintiff was not listed as beneficiary. MetLife further found that Plaintiff had not demonstrated that the Insured was not competent to make the decision to change the beneficiary during the phone call.[29] Finally, MetLife found that even if the telephonic beneficiary change were invalidated, Plaintiff still would not be entitled to the benefits because the most recent prior beneficiary designation in 1985 did not name Plaintiff as beneficiary.[30] Plaintiff appealed, but MetLife upheld the denial.[31] MetLife paid Givens the full amount of basic and optional life insurance benefits on August 8, 2024.[32]

Plaintiff filed this lawsuit on August 15, 2024. She alleges that after hiring Givens to take care of her mother, "Givens surreptitiously obtained a power of attorney for the Insured, moved the Insured out of [Plaintiff's] house and into her own house, and procured a beneficiary change making herself the beneficiary of the Insured's GM life insurance benefits."[33] Plaintiff alleges in the Complaint that "the most recent beneficiary designation on file was procured through fraud or undue influence, and is therefore invalid."[34]

In her Opening Brief on the Merits, Plaintiff contends that the attempt to designate Givens as beneficiary was invalid for two reasons. First, she argues that the terms of the Plan require all beneficiary changes to be made in writing.[35] Second, Plaintiff contends

---

[28] *Id.* at pp. 42–43.
[29] *Id.*
[30] *Id.*
[31] *Id.* at p. 46; Rec. Doc. 28-6, pp. 39–41.
[32] Rec. Doc. 28-4, p. 1.
[33] Rec. Doc. 1, ¶ 13.
[34] *Id.* at ¶ 20.
[35] Rec. Doc. 33-1, pp. 4–6.

that even if the telephonic change of beneficiary had been permissible under the terms of the Plan, it should be invalidated because Givens unduly influenced the Insured.[36] Plaintiff avers that the prior beneficiaries, the Insured's parents, predeceased the Insured, and that Plaintiff was entitled to receive the benefits under the terms of the Plan as the default beneficiary due to her relation to the Insured and the absence of any other validly designated beneficiary at the time of the Insured's death.[37]

In response, MetLife contends that the Plan does not prohibit beneficiary changes made by telephone.[38] MetLife also argues that there is no evidence of undue influence with respect to the 2022 designation of Givens.[39] Even if the designation were invalidated, MetLife maintains that the evidence in the Administrative Record does not support Plaintiff's claim that she was the proper beneficiary at the time of the Insured's death.[40]

## II.    LAW AND ANALYSIS

This matter is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA's civil enforcement provisions are found in Section 502(a) of the statute (codified at 29 U.S.C. § 1132(a)). Relevant here, Section 502(a)(1)(B) of ERISA allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Courts conduct *de novo* review when adjudicating ERISA benefit disputes unless the plan documents give "the administrator or fiduciary discretionary authority to

---

[36] *Id.* at pp. 8–11.
[37] *Id.* at pp. 6–7.
[38] Rec. Doc. 34-1, pp. 11–15.
[39] *Id.* at pp. 3–4, 11–15.
[40] *Id.* at pp. 9–11.

determine eligibility for benefits or to construe the terms of the plan."[41] The parties have stipulated that the Plan does not grant MetLife such discretionary authority.[42] Accordingly, this Court's review of the claim determination will be *de novo*.

## A. Change of Beneficiary

The Court first addresses Plaintiff's argument that the Insured's attempted beneficiary change in 2022 was invalid because it was made by telephone. Plaintiff relies on the following language from the Plan's Certificate of Insurance (the "Certificate"), arguing that it unambiguously requires that a beneficiary choice be made in writing:

> The "Beneficiary" is the person or persons YOU choose to receive any benefit payable because of YOUR death.
>
> YOU make YOUR choice in writing on a form approved by us. This form must be filed with the records for THIS PLAN.
>
> YOU may change the Beneficiary at any time by filing a new form with us. YOU do not need the consent of the Beneficiary to make a change. When we receive a form changing the Beneficiary, the change will take effect as of the date YOU signed it. The change of Beneficiary will take effect even if YOU are not alive when it is received, provided such change of beneficiary is received prior to the payment of benefits. Any beneficiary designation made for Basic Life Benefits will also apply to Accidental Death or Dismemberment Benefits.[43]

However, MetLife argues that the Plan's Summary Plan Description (the "SPD") allows participants to change their beneficiary by telephone. The SPD provides:

> You may change or view your beneficiary designations at any time via gmbenefits.com > *Life Insurance*. You may also call the GM Benefits & Services Center at 1-800-489-4646 and select "Life Insurance" to be transferred to a MetLife Customer Service Associate; for hearing and/or speech support, call MetLife directly at 1-888-688-2860.[44]

---

[41] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).
[42] Rec. Doc. 32.
[43] Rec. Doc. 28-2, p. 59.
[44] Rec. Doc. 28-1, p. 56.

Thus, Plaintiff relies on the text of the Certificate while MetLife relies on the text of the SPD. The Fifth Circuit previously held that when the terms of the SPD conflict with the terms of the plan, the SPD controls.[45] Later, however, the Supreme Court held in *CIGNA Corp. v. Amara* "that summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)."[46] Since then, the Fifth Circuit has acknowledged that "*CIGNA* changes our case law to the extent that the plan text ultimately controls the administrator's obligations in a § [502](a)(1)(B) action[.]"[47]

Both parties refer to the Certificate[48] as the document that contains the actual contractual terms of the Plan.[49] Although courts have considered SPDs to be "the plan" in other cases, this is generally done where there is no separate written instrument other than the SPD to provide the terms of the plan.[50] That is not the case here. Accordingly, the Court will focus on the Insured's compliance with the terms provided in the Certificate.

The Certificate requires that an insured's choice of beneficiary be made "in writing on a form approved by" MetLife. It further provides that a change of beneficiary may be made "by filing a new form with us," and that "the change will take effect as of the date [the insured] signed it." The Insured undisputedly attempted to designate Givens as

---

[45] *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 980–982 (5th Cir. 1991). *See also Washington v. Murphy Oil USA, Inc.*, 497 F.3d 453, 456 (5th Cir. 2007).

[46] *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011).

[47] *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012).

[48] Rec. Doc. 28-2.

[49] MetLife cites to the Certificate of Insurance in its brief when it identifies the policy issued to the Insured and refers to it as "the Plan." Rec. Doc. 34-1, p. 4 n.8.

[50] *E.g., Omega Hosp., LLC v. United HealthCare Servs., Inc.*, No. CV 16-560-JWD-EWD, 2020 WL 7049857, at *21–22 (M.D. La. Dec. 1, 2020) (citing *Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 344–345 (5th Cir. 2017); *Dudley v. Sedgwick Claims Mgmt. Servs. Inc.*, 495 F. App'x 470, at *1 n.1 (5th Cir. 2012); *Sigal v. Metro. Life Ins. Co.*, No. 16-3397, 2018 WL 1229845, at *7 (S.D.N.Y. Mar. 5, 2018)).

beneficiary in 2022 by telephone, not in writing. Therefore, she did not technically comply with the terms of the Plan.[51]

Plaintiff argues the Insured's failure to comply with the Plan's requirements is the end of the inquiry, resulting in the invalidation of the attempted designation of Givens. MetLife, however, relies on a recent unpublished Fifth Circuit opinion, *Morgan v. Barrera*,[52] which upheld a beneficiary change even though it did not strictly comply with the plan's requirements. In *Morgan*, the insured was advised by the plan that her employer no longer had access to prior beneficiary forms and that she needed to file a new beneficiary designation form on or after a certain date.[53] The insured did not file a new beneficiary form. She did sign a witnessed document purporting to name different beneficiaries (the Morgans) than the ones previously designated, but the opinion does not indicate that this document was transmitted to the administrator.[54] The insured also told her pastor about her desire for the Morgans to receive her benefits, and she relayed this information to her employer (Walgreens) during a phone call.[55] The court noted ERISA's silence "on how to choose a beneficiary among disputing claimants," but went on to apply "the federal common law doctrine of substantial compliance," under which "a policyholder's attempted change in beneficiary is sufficient 'when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.'"[56] The court found that the

---

[51] *See Hartford Life & Acc. Ins. Co. v. Wilmore*, 31 F. App'x 832, at *1 (5th Cir. 2002) (finding similar plan language required changes be made in writing on a form).

[52] *Morgan v. Barrera*, No. 21-20497, 2025 WL 1157549 (5th Cir. Apr. 21, 2025).

[53] *Id.* at *1.

[54] *Id.*

[55] *Id.*

[56] *Id.* at *3 (quoting *Phoenix. Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994)).

doctrine operated to validate the insured's attempt to change her beneficiaries because she "evidenced her intent to change her beneficiary designation and took some positive action to effectuate that change. She stated multiple times that she wanted the Morgans to receive her life insurance proceeds, including once to a Walgreen's representative."[57] The court also found it relevant that the administrator "accepted and complied with the attempted change" and that it recognized the Morgans as the intended beneficiaries.[58] Therefore, the court found the change in beneficiary effective despite the insured's failure to technically comply with the plan's requirements.

Although there are no published Fifth Circuit opinions embracing the doctrine of substantial compliance in ERISA cases, courts within the Circuit have done so. The Court of Appeals applied the doctrine in another unpublished opinion in *Hartford Life & Acc. Ins. Co. v. Wilmore*.[59] Relying on *Wilmore*, district courts in this Circuit have utilized the doctrine to uphold attempted beneficiary changes where the insured failed to technically adhere to the required procedures.[60]

In applying the substantial compliance doctrine, the Fifth Circuit in *Wilmore* cited with approval *Phoenix Mut. Life Ins. Co. v. Adams*, where the Fourth Circuit elaborated on the principle as follows:

---

[57] *Id.*

[58] *Id.*

[59] *Wilmore*, 31 F. App'x 832.

[60] *Boulet v. Fluor Corp.*, No. CIV.A. H-05-0105, 2005 WL 2860993, at *9–11 (S.D. Tex. Oct. 31, 2005); *Metro. Life Ins. Co. v. Claspell*, No. CIV.A. 05-0112, 2006 WL 2505575 (W.D. La. Aug. 25, 2006); *Cass v. Allstate Ins. Co.*, No. CIV. A. 07-4125, 2008 WL 4909182 (E.D. La. Nov. 13, 2008). *See also Connecticut Gen. Life Ins. Co. v. Thomas*, 910 F. Supp. 297, 301 (S.D. Tex. 1995) (recognizing the doctrine in an ERISA case but finding the insured did not substantially comply because there was no evidence that the insured intended to change the beneficiary nor that the insured undertook any positive action to effectuate such an intent); *Lee v. BellSouth Sav. & Sec. Plan*, No. CV 05-879-RET-SCR, 2006 WL 8433370, at *3 (M.D. La. June 22, 2006) (recognizing the doctrine applies in ERISA cases when a participant's designation of an insurance beneficiary is at issue, but finding it inapplicable with respect to pension benefit claims).

By definition, substantial compliance is less than actual compliance. The point of the doctrine, whether found in federal or state law, is to give effect to an insured's intent to comply when that intent is evident. The insured decedent need not actually comply, but need only *substantially* comply with the change of beneficiary provisions of the policy to effectuate the desired change. A federal common law of substantial compliance requiring that an insured intend to change his beneficiary and that he take positive action to effectuate that intent furthers the purposes of ERISA without compromising the integrity of policies issued by plan sponsors.[61]

In this case, the Insured clearly evidenced her intent to designate Givens as beneficiary during the phone call summarized above, satisfying the first element of the substantial compliance doctrine. To meet the second element, the Insured must have "attempt[ed] to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy."[62] After being told by the representative that she could change her beneficiary over the phone, the Insured undertook positive action by verbally affirming her desire for Givens to receive the benefits.

The Court finds that the Insured substantially complied with the terms of the Plan in designating Givens as beneficiary. The purpose of the doctrine is to give effect to an insured's intention to name a beneficiary despite technical noncompliance with the required procedures.[63] The Court finds this purpose particularly served in this case, where the Insured was told by the representative that she could change her beneficiary over the

---

[61] *Phoenix Mut.*, 30 F.3d at 565. *See also Davis v. Combes*, 294 F.3d 931, 942 (7th Cir. 2002) ("The fact that a policy holder made a careless error should not conclusively determine whether her efforts at naming a beneficiary were effective for purposes of the policy and the statute. Carelessness suggests a lack of attention to detail, but it tells us very little about whether the policy holder formed the necessary intent to name a beneficiary and whether she took sufficient steps consistent with that intent to implement her decision.").

[62] *Morgan*, 2025 WL 1157549, at *3 (quoting *Phoenix Mut.*, 30 F.3d at 564).

[63] *Phoenix Mut.*, 30 F.3d at 565; *Davis*, 294 F.3d at 942. *See also Phoenix Mut. Life Ins. Co. v. Adams*, 828 F. Supp. 379, 384 (D.S.C. 1993), *aff'd*, 30 F.3d 554 (4th Cir. 1994) (quoting *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 578 A.2d 98, 100 (1990) ("The philosophy behind this rule is that the right of the insured to change beneficiaries should be given effect over procedural technicalities.").

phone. The Insured conveyed her intention more than once during the phone call, including by providing her "electronic signature" by saying "I agree" to confirm her desire to choose Givens as the new and sole beneficiary. The Court finds this sufficiently similar to the action required by the Plan to constitute substantial compliance, especially considering the fact that the representative was expressly allowing the Insured to change her beneficiary during the phone call. Moreover, MetLife clearly "accepted and complied with the attempted change," which the Fifth Circuit in *Morgan* found to weigh in further favor of honoring the insured's demonstrated intent to name a new beneficiary.[64]

For these reasons, the Court concludes that the Insured substantially complied with the requirements of the Plan in changing her beneficiary to Givens during the phone call on August 16, 2022, and that Givens thereby became the beneficiary. The Court now turns to Plaintiff's argument that the beneficiary change should be invalidated on the basis of undue influence.

## B. Undue Influence

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute.[65] If ERISA is silent on an issue related to a covered plan, federal courts turn "to federal common law which, if not clear, may draw guidance from analogous state law."[66] However, "even when it is appropriate for a federal court to create federal common law, it may use state common

---

[64] *Morgan*, 2025 WL 1157549, at *3.
[65] *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir. 1994), *abrogated on other grounds by Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) (quoting 29 U.S.C. § 1144(a)).
[66] *Id.* (quoting *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir. 1990)).

law as the basis of the federal common law only if the state law is consistent with the policies underlying the federal statute in question."[67]

Plaintiff argues that ERISA does not address the issue of beneficiary designations that are obtained through undue influence.[68] She urges the Court to draw guidance from state law to determine federal common law within this statutory gap.[69] Plaintiff acknowledges that Louisiana does not recognize undue influence claims in the context of life insurance, but instead points to Mississippi and Texas law.[70] Under Mississippi law, Plaintiff would need to show that Givens "abused" her relationship with the Insured either "by asserting dominance" or "by substituting her intent for that of" the Insured.[71] Under Texas law, Plaintiff would have to show: "(1) the existence and exertion of an influence; (2) that operates to subvert or overpower the person's mind when executing the document; and (3) that the person would not have executed the document but for the influence."[72]

The Court is not especially inclined to create federal common law on an issue not addressed by the Fifth Circuit in the context of ERISA, and based on a theory that Plaintiff recognizes is not supported by Louisiana law in the context of life insurance. However, even assuming without deciding that an undue influence claim is legally viable in this case, the Court finds that the claim lacks sufficient factual support. Based on the recorded phone call during which the beneficiary was changed to Givens, Plaintiff argues that "it

---

[67] *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1297 (5th Cir. 1989) (quoting *Nachwalter v. Christie*, 805 F.2d 956, 959–960 (11th Cir. 1986)).

[68] Rec. Doc. 33-1, p. 8.

[69] *Id.*

[70] *Id.* at pp. 8–9.

[71] *Great Am. Life Ins. Co. v. Tanner*, 5 F.4th 601, 609 (5th Cir. 2021) (internal bracketed language omitted) (quoting *In re Will of Wasson*, 562 So. 2d 74, 78 (Miss. 1990)).

[72] *Paige-Hull v. Wofford*, No. CIV A 3:05CV1339-BH, 2008 WL 4274504, at *7 (N.D. Tex. Sept. 17, 2008) (citing *Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963)).

was readily apparent that the Insured was dependent on others to answer simple questions for her, such as her most recent address and current telephone number, which she could not answer without [Givens'] assistance."[73] Based on the Court's review of the recording, the Insured recited her current address without issue.[74] Both the Insured and Givens took about four minutes to find the Insured's previous address, which was the one listed on the policy at the time,[75] but the Court does not find this to be evidence of undue influence. It is not completely clear from the recording whether Givens assisted the Insured in reciting her phone number,[76] but even if she did, the Court finds this would likewise be insufficient evidence to support an undue influence claim. Plaintiff further argues that the Insured "referred to Givens as her 'cousin' despite the fact that she was of no relation whatsoever to the Insured, and only knew her because LaShann had hired her to be the Insured's caretaker."[77] However, Plaintiff points to no evidence regarding whether or not Givens is the Insured's cousin and fails to adequately explain why this would support the undue influence claim.

In sum, Plaintiff argues that the phone call recording constitutes evidence of the Insured's confusion and Givens' control over the Insured. The Court disagrees. The Insured was clear in giving the representative permission to speak to Givens during the call, and the Insured personally verified that she wanted Givens to be the beneficiary. Without more, the audio recording cannot provide sufficient factual support for a claim of undue influence.

---

[73] Rec. Doc. 33-1, p. 10.
[74] Rec. Doc. 31, timestamp 1:30.
[75] *Id.* at timestamp 2:10–6:11.
[76] *Id.* at timestamp 6:12–6:28.
[77] Rec. Doc. 33-1, p. 11.

### C. Judicial Notice

Prior to the 2022 designation of Givens, the Insured's parents, Amos and Marie Adams, were the most recently designated beneficiaries.[78] Claim notes in the Administrative Record indicate that on April 1, 2024, MetLife conducted a public records search which revealed that Amos Adams predeceased the Insured, but that Marie Adams was still alive.[79]

Plaintiff argues MetLife was factually incorrect in its determination that Marie Adams was still living in 2024.[80] She asserts that Marie Adams died in 2021. In support, she attaches to her brief a purported death certificate showing that Marie Adams died on September 23, 2021.[81] Plaintiff argues that she became the default beneficiary under the terms of the Plan as a result of both Amos and Marie Adams predeceasing the Insured.[82]

The purported death certificate of Marie Adams is not in the Administrative Record. Plaintiff requests that the Court take judicial notice of Marie Adams' death in 2021.[83] The Court finds Plaintiff's request to lack legal support. In *Vega v. Nat'l Life Ins. Servs., Inc.*, the Fifth Circuit made clear that, "when assessing factual questions, the district court is constrained to the evidence before the plan administrator."[84] A district court may not stray from the administrative record "except for certain limited exceptions … related to either interpreting the plan or explaining medical terms and procedures relating to the claim."[85]

---

[78] Rec. Doc. 28-5, pp. 23–26.
[79] Rec. Doc. 28-4, p. 15.
[80] Rec. Doc. 33-1, p. 6.
[81] Rec. Doc. 33-2.
[82] Rec. Doc. 33-1, p. 7.
[83] *Id.* at pp. 6–7.
[84] *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (collecting cases). *See also Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 256–257 (5th Cir. 2018) (clarifying that the reasoning of *Vega* in this respect applies in cases of *de novo* review).
[85] *Id.*

Importantly, "the district court is precluded from receiving evidence to resolve disputed material facts—i.e., a fact the administrator relied on to resolve the merits of the claim itself."[86] In other words, "[a] plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded."[87]

Even if Plaintiff were successful in invalidating the designation of Givens as beneficiary, the Administrative Record does not establish that Plaintiff would be entitled to receive the benefits. Plaintiff stipulated to the completeness of the Administrative Record in this case.[88] Plaintiff has cited no cases, and the Court has found none, which support taking judicial notice of a fact outside of the administrative record in an ERISA case to correct an alleged factual error during the claim determination. This case does not involve any of the narrow exceptions which would potentially allow the Court to consider materials not in the Administrative Record. Instead, Plaintiff raises a factual dispute by relying on evidence which was not before MetLife during its consideration of the claim. This is foreclosed by the Fifth Circuit's pronouncements in *Vega*.[89] Therefore, Plaintiff has not proven her entitlement to the life insurance benefits in any event.

\* \* \*

The Insured named Givens as beneficiary to her life insurance benefits in 2022. Plaintiff has not shown that this choice should be invalidated. Even if it were invalidated, the evidence in the Administrative Record does not support Plaintiff's claim that she is entitled to receive the benefits under the Plan.

---

[86] *Id.*
[87] *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (citing *Vega*, 188 F.3d at 299–300).
[88] Rec. Doc. 32.
[89] *Vega*, 188 F.3d at 299–300.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Judgment on the Administrative Record[90] is DENIED, and Defendant's Motion for Judgment on the Administrative Record[91] is GRANTED. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __9th__ day of _____June_____, 2026.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[90] Rec. Doc. 33.
[91] Rec. Doc. 34.